**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **EMILIA R. LOPEZ**, | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-24-CV-00054-KC** |
| | § | |
| **STATE FARM LLOYDS,** | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**
**REGARDING DISCOVERY MOTIONS**

Presently before the Court are three discovery motions that Plaintiff Emilia Lopez filed:
(1) "First Motion to Compel" (ECF No. 25), (2) "Motion to Strike Unsworn Declaration of
Michael T. Jenson" (ECF No. 27), and (3) "Motion for Leave to File Supplemental Motion to
Compel" (ECF No. 43). Relatedly, Defendant State Farm Lloyds submitted a request for a
hearing on the First Motion to Compel. *See* ECF No. 33. The Honorable District Judge
Kathleen Cardone (the referring court) referred Lopez's motions to the undersigned Magistrate
Judge. Finding that a hearing is unnecessary, the Court DENIES State Farm's request for the
same. Further, for the reasons that follow, the Court finds that Lopez's First Motion to Compel
should be GRANTED IN PART and DENIED IN PART, and her remaining motions should be
DENIED AS MOOT.

**I.  BACKGROUND**

According to Lopez, on August 3, 2023, her home sustained water damage: water from a
water heater damaged the wood and tile flooring of her home.[1] On that day, Policy Number

---

[1] Compl. at ¶ 10, ECF No. 1; Pl.'s Resp. to Proposed Undisputed Facts at ¶ 5 (submitted with
Lopez's response to State Farm motion for partial summary judgment, which is currently pending), ECF
No. 45-1.

84QJ95048 (Policy), a homeowner insurance policy, issued by State Farm was in effect.[2]  On September 6, 2023, Lopez submitted a claim to State Farm against the Policy for the damage.[3]  According to Lopez, on May 6, 2024, State Farm constructively denied her insurance claim[4]— which occurred a few months after she brought this lawsuit in February 2024.  In this lawsuit, Lopez asserts claims for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and breach of contract, as well as common-law claims for bad faith, fraud, and fraud by nondisclosure.

In May 2024, the referring court issued a scheduling order, setting a deadline of December 2, 2024, to complete discovery.[5]  Lopez served State Farm with her First Request for Production on July 27, 2024, and her Second Request for Production on August 30, 2024.  State Farm served its responses and objections to Lopez's First Request for Production on September 16, 2024, and to her Second Request for Production on September 27, 2024.  In late November 2024, the parties moved for entry of an agreed protective order to govern discovery of confidential information, and the referring court granted their request.[6]

---

[2] Compl. at ¶ 7; Def.'s Proposed Undisputed Facts at ¶ 3 (submitted with State Farm's motion for partial summary judgment), ECF No. 40-1.

[3] Compl. at ¶¶ 6, 10, 12; Def.'s Proposed Undisputed Facts at ¶ 5.

[4] Pl.'s Resp. to Proposed Undisputed Facts at ¶ 9.  At the time she initiated this lawsuit, Lopez alleged that "[t]o date, State Farm continues to delay in the payment for the damages to the property." Compl. at ¶ 14.

[5] *See* Scheduling Order at 1, ECF No. 9.

[6] Agreed Protective Order, ECF No. 24.

On December 2, 2024—the last day of the discovery period—Lopez filed her First Motion to Compel,[7] and on December 9, 2024, State Farm filed its response thereto.[8] On December 12, 2024, Lopez moved to strike Michael Jenson's declaration that State Farm submitted in support of its response to her First Motion to Compel, and on December 17, 2024, State Farm filed a response to Lopez's Motion to Strike.[9] On December 18, 2024, Lopez filed a reply in support of her First Motion to Compel, and on January 7, 2025, State Farm filed, with the leave of the Court, a sur-reply.[10] Thus, the parties' briefing on Lopez's First Motion to Compel and Motion to Strike was completed by January 7, 2025.

Thereafter, on January 22, 2025, Lopez filed her Motion for Leave to File Supplemental Motion to Compel, to which State Farm responded on January 31, 2025.[11]

## II.  STANDARD

Federal Rule of Civil Procedure 26(b) sets out the scope of permissible discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added).[12] "'[A] request for discovery should be considered relevant if there is any possibility

---

[7] Pl.'s First Mot. to Compel [hereinafter Pl.'s First MTC], ECF No. 25.

[8] Def.'s Resp. to Pl.'s First MTC, ECF No. 26

[9] Pl.'s Mot. to Strike Unsworn Declaration of Michael T. Jensen [hereinafter Pl.'s MTS], ECF No. 27; Def.'s Resp. to Pl.'s MTS, ECF No. 28.

[10] Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Compel [hereinafter Pl.'s Reply], ECF No. 32; Def.'s Sur-Reply in Opp'n to Pl.'s First MTC [hereinafter Def.'s Sur-Reply], ECF No. 38.

[11] Pl.'s Mot. for Leave to File Suppl. Mot. to Compel [hereinafter Pl.'s Leave Mot.], ECF No. 43; Def.'s Resp. to Pl.'s Leave Mot., ECF No. 47.

[12] Information discoverable within the scope of Rule 26(b) "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment ("The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted.'").

that the information sought may be relevant to the claim or defense of any party.'" *Merrill v.*
*Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Sheldon v. Vermonty*, 204
F.R.D. 679, 689 (D. Kan. 2001)).  Although broad, "Rule 26(b) 'has never been a license to
engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Crosby v. La. Health*
*Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting *Murphy v. Deloitte & Touche*
*Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).

A party seeking discovery may move to compel discovery if the responding party fails to
answer an interrogatory submitted under Rule 33 or fails to produce documents requested under
Rule 34.  Fed. R. Civ. P. 37(a)(3)(B).[13]  The court may decline to compel, and at its option, may
limit the extent of discovery if the requested discovery is outside the scope permitted by Rule
26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C)(iii); *Crosswhite v. Lexington Ins.*, 321 F. App'x 365, 368
(5th Cir. 2009).  "Rule 26 vests the trial judge with broad discretion to tailor discovery
narrowly."  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

On a motion to compel, unless the relevancy of a discovery request is facially clear, *see*
*Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982) (observing that "the information
requested was patently relevant to the issue[s]" in that case), *cited with approval in McLeod,*
*Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990), the movant
(*i.e.*, the party seeking discovery) must specifically articulate why the request is relevant to the
claims or defenses in the case, *see Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, No. 1:18-CV-596-
RP, 2019 WL 13159727, at *1 (W.D. Tex. Sept. 17, 2019) ("[T]he burden lies with the moving
party to show clearly that the information sought is relevant to the case.").  The non-movant (*i.e.*,

---

[13] *See also* Fed. R. Civ. P. 33(a) (A party may serve on any other party written interrogatories
which "may relate to any matter that may be inquired into under Rule 26(b)."); *id.* 34(a)(1)(A) (A party
may serve on any other party "a request within the scope of Rule 26(b) . . . to produce . . . any designated
documents or electronically stored information" in the other party's "possession, custody, or control.").

the party resisting discovery), on the other hand, "'must show specifically how each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.'" *Quarles*, 894 F.2d at 1485 (cleaned up) (quoting *Josephs*, 677 F.2d at 992).

## III.   DISCUSSION

### A.  First Motion to Compel and Motion to Strike

In her First Motion to Compel, Lopez lists several Requests for Production (RFPs): to wit, RFP Nos. 1, 7, 9, 10, 11, 15, 16, and 23 in her First Request for Production and RFP Nos. 3, 4, and 5 in her Second Request for Production.  Pl.'s First MTC at 2–3.  Of these, only three are disputed.  Specifically, Lopez states that after conferring, State Farm agreed to clarify its responses to or agreed to produce documents responsive to RFP Nos. 1, 7, 9, 10, 11, 15, 16, and 23. *Id.* at 18–19.  It appears that as of the date of State Farm's filing its response to Lopez's First Motion to Compel, State Farm produced, or was in the process of producing, certain documents responsive to RFP Nos. 1, 7, 9, 15, 16, and 23 in her First Request for Production as well as RFP No. 5 in her Second Request for Production.  Def.'s Resp. to Pl.'s First MTC at 2 & nn. 1–4.  It also appears that on December 17, 2024, State Farm produced additional documents.  Def.'s Resp. to Pl.'s Leave Mot. at 2; *see also id.*, Ex. A.  Further, State Farm's subsequent briefs indicate that it has no documents in its possession, custody, or control that are responsive to RFP Nos. 10 and 11 in Lopez's First Request for Production.[14]  It thus appears, and the parties' briefs indicate, that their disputes turn on RFP No. 15 in Lopez's First Request for Production and RFP Nos. 3 and 4 in her Second Request for Production.

---

[14] RFP Nos. 10 and 11 seek documents "[i]f [State Farm] assigned a third-party adjuster to handle this claim," Pl.'s First MTC at 2, but according to State Farm, no third-party adjuster was involved in its handling of Lopez's insurance claim, Def.'s Resp. to Pl.'s Leave Mot. at 3.

RFP Nos. 3 and 4 in Lopez's Second Request for Production seek documents relating to State Farm's "Advancing Claims Excellence" (ACE) study (or "survey," as Lopez puts it).  A brief background on ACE is helpful.[15]  ACE was an internal study of State Farm's claim handling procedures, and it was conducted between the mid to late 1990's in every region where State Farm operates, including the South Texas Region.[16]  State Farm retained McKinsey & Company, a third-party consulting firm, to assist with the study.[17]  The study reviewed State Farm's closed claim files involving fire and auto insurance claims.[18]  Here, State Farm asserts that the purpose of the ACE study was to help find additional ways to give the best value to its customers,[19] whereas Lopez asserts that the study's purpose was to identify ways to artificially lower claim payouts in a manner detrimental to State Farm's first- and third-party claimants and thereby to transform State Farm into the most profitable claim service in the industry.[20] According to Lopez, based upon the findings of the ACE study and with the assistance from

---

[15] In sketching this general background, the Court relies on the record in this case as well as other cases that have dealt with ACE-related discovery disputes.  In their briefs, the parties cite to some of these cases.  Pl.'s First MTC at 10 n.43 (citing cases); Def.'s Sur-Reply at 2 (same).

[16] *See* Ans. at ¶ 21, ECF No. 4; Def.'s Resp. to Pl.'s First MTC, Ex. C at 5 (letter from James A. Tatem, State Farm's counsel, to Danny Ray Scott, Lopez's counsel, responding to Lopez's notice of deposition), ECF No. 26-3; Mot. to Compel, Ex. B (a State Farm document), *Barten v. State Farm Mutual Auto. Ins.*, No. CIV 12-399-TUCCJK (D. Ariz. Mar. 12, 2013), ECF No. 117-2 [hereinafter *Barten Ex. Doc. 117-2*], *discussed in part in Barten*, 2013 WL 4046700, at *1–*2 (D. Ariz. May 31, 2013); *Chauvin v. State Farm Mut. Auto. Ins.*, No. 10-CV-11735, 2011 WL 1810625, at *2 (E.D. Mich. May 11, 2011); *Crump v. State Farm Mut. Auto. Ins.*, No. 256558, 2005 WL 3303978, at *1 n.2 (Mich. Ct. App. Dec. 6, 2005) (unpublished).

[17] Ans. at ¶ 21; Def.'s Resp. to Pl.'s First MTC, Ex. C at 5.

[18] Def.'s Resp. to Pl.'s First MTC, Ex. C at 5; *Chauvin*, 2011 WL 1810625, at *2; *Barten Ex. Doc. 117-2*, *supra*.

[19] Def.'s Resp. to Pl.'s First MTC, Ex. C at 5; Compl. at ¶ 87.

[20] Compl. at ¶¶ 21, 87.

McKinsey, State Farm redesigned its claim handling procedures and policies—presumably, soon after the study concluded.[21]

As the parties' briefs indicate, and the Court's research reveals, throughout the mid-2000's and the mid-2010's, State Farm's documents regarding the ACE study and McKinsey's role therein were the subject of discovery disputes in multiple cases in federal and state courts. Discovery was allowed in some of these cases[22] but not in other cases.[23]  In at least two cases, it

---

[21] *See id.* at ¶¶ 19, 21, 31, 38, 85; Pl.'s First MTC at 8; *cf. also Barten Ex. Doc. 117-2, supra* ("The Auto and Fire studies identified both our strengths and areas for improvement in our claim handling.  We learned that quality assurance makes good business sense.  Many have asked, 'Where do we go from here now that ACE has been completed?'  We may no longer use the term ACE, but quality in our claim operations is still our responsibility.  ACE provided a foundation; it enabled us to build a more comprehensive quality assurance program into our way of doing business.").

[22] *E.g., Sims v. State Farm Mut. Auto. Ins*., No. 4:13-CV-00371 JLH, 2014 WL 12650652, at *4, *7 (E.D. Ark. Apr. 30, 2014) (compelling production of documents related to ACE program as "they relate to the handling of underinsured motorist claims in Arkansas"); *Barten*, 2013 WL 4046700, at *2 (compelling production of "the documentation of programs that were informed by or grew out of the original ACE principles"); *Atkins v. State Farm Mut. Auto. Ins.*, No. 10-CV-12755, 2011 WL 3204839, at *5, *7 (E.D. Mich. July 28, 2011) (compelling production of ACE program documents); *Chauvin*, 2011 WL 1810625, at *2–*3 (allowing production of Michigan ACE file documents); Order, *Armisted v. State Farm Mut. Auto. Ins.*, No. 2:07-CV-10259 (E.D. Mich Feb. 26, 2008) (ordering production of Michigan ACE program documents and "each report, blue book, paper or document . . . produced by or contributed to by McKinsey"), ECF No. 69; *Van Emon v. State Farm Mut. Auto. Ins*., No. 05-CV-72638, 2008 WL 205243, at *2, *7 (E.D. Mich. Jan. 24, 2008) (affirming magistrate judge's order requiring production of documents regarding ACE program).

[23] *E.g., Gade v. State Farm Mut. Auto. Ins*., No. 5:14-CV-00048, 2015 WL 12964614, at *2 n.2, *4 (D. Vt. May 7, 2015) (declining to compel deposition about ACE program); *Lantz v. State Farm Mut. Auto. Ins.*, No. CIV. 14-12813, 2014 WL 6974856, at *1, *4–*5 (E.D. Mich. Dec. 9, 2014) (sustaining objections to requests for production of documents regarding ACE program); *Med City Rehab. Servs., LLC v. State Farm Auto. Ins.*, No. 11-14777, 2012 WL 12929897, at *2 (E.D. Mich. Dec. 10, 2012) (declining to compel production of documents regarding McKinsey and ACE); *Wagner v. State Farm Mut. Auto. Ins.*, No. 2:10-CV-11733, 2011 WL 13217193, at *1–*3 (E.D. Mich. May 5, 2011) (denying requests, in connection with a deposition, for production of documents generated as part of the ACE study); *Thomas v. State Farm Mut. Auto. Ins.*, No. 2:10-CV-00801-LDG, 2010 WL 4983299, at *1, *4 (D. Nev. Dec. 2, 2010) (issuing protective order against discovery of information about ACE program).

appears, production of some of the documents relating to ACE was ordered without any

protective order prohibiting their use in other cases or disclosure to the general public.[24]

 With this background, the Court turns to the parties' specific discovery disputes. But as a

preliminary matter, the Court first addresses Lopez's motion to strike Jensen's declaration, which

State Farm submitted with its response to Lopez's First Motion to Compel.

### 1. *Plaintiff's Motion to Strike*

 In his declaration, Jensen testifies that he has been employed by State Farm Mutual

Automobile Insurance Company (an entity different from State Farm Lloyds, which is the named

defendant here, though a related entity[25]); that he is familiar with the consulting services

McKinsey provided to the State Farm companies in the late 1990's in relation to a project

concerning property claims that was Fire ACE; and that in the late 1990's, the State Farm

companies performed a Fire ACE study in Texas. Def.'s Resp. to Pl.'s First MTC, Ex. D at ¶¶

---

[24] *See Chauvin*, 2011 WL 1810625, at *2–*3 (denying State Farm Automobile Insurance Company's motion for protective order against plaintiff's requests, in connection with deposition, for certain Michigan ACE file documents—while rejecting State Farm's arguments that the plaintiff "should not be allowed to use these [ACE] materials in other cases" and that "these records, if disclosed to the general public, may result in annoyance" to State Farm); *compare State Farm Mut. Auto. Ins. v. Elite Health Ctrs., Inc.*, No. 2:16-CV-13040, 2019 WL 2754653, at *1 & n.1, *9 (E.D. Mich. July 2, 2019) (addressing arguments by subpoenaed third-party—a personal injury attorney who was an unnamed co-conspirator in State Farm Mutual's lawsuit against multiple medical professionals and entities for their role in a civil conspiracy and scheme to defraud—that the State Farm Mutual's subpoena was retaliatory because the attorney "publicly exposed" State Farm's ACE program in a 2015 article in the *Michigan Bar Journal*), *with* Nonparty Michael J. Morse's Resp. in Opp'n to State Farm Mutual's Mot. to Compel Michael Morse to Produc. Docs. Responsive to State Farm Mutual's Subpoena at 10, *Elite Health Ctrs.*, No. 2:16-CV-13040 (E.D. Mich. Feb. 5, 2019) (stating "Morse's Law Firm was able to discover and expose the ACE program and then described the ACE program in a 2015 published article and at seminars it conducted in Michigan."), ECF No. 403, *and id.* at 10 n.3 (stating "Morse's Law Firm was able to get the protective order lifted which had enabled State Farm to protect these documents." (citing Ex. F, an order issued by a judge of the Circuit Court for the Oakland County in Michigan)).

[25] In a response to Lopez's Rule 30(b) deposition request, State Farm draws distinction among various related State Farm entities. *See* Def.'s Resp. to Pl.'s First MTC, Ex. C at 5 n.1 ("In this paragraph, 'State Farm' refers generally to State Farm companies. Defendant does not by this paragraph concede that McKinsey & Co. provided any consulting services to State Farm Lloyds at any time.").

2–3 [hereinafter Jensen Decl.], ECF No 26-4.  As important, Jensen testifies that "[n]one of the

Fire ACE initiatives[26] were in use on August 3, 2023, which is the date of loss of this lawsuit and

well over 20 years from the conclusion of Fire ACE."  *Id.* at ¶ 5.  In its response to Lopez's First

Motion to Compel, State Farm recites Jensen's testimony about "the Fire ACE initiatives" not

being in use on the date of loss, and relying on that testimony, State Farm argues that documents

related to a consulting project that occurred decades ago—that is, the documents requested in

RFP No. 3—are "not relevant" to either party's claims or defenses.  Def.'s Resp. to Pl.'s First

MTC at 6 (citing Jensen Decl.).

Lopez moves to strike Jensen's declaration pursuant to Rule 37(c)(1), as applicable to

Rule 26(a)(1)(A)(i).  Rule 37(c)(1) provides: "If a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).[27]  Rule 26(a)(1)(i), which

governs initial disclosure, requires a party to provide to the other party "the name and, if known,

---

[26] It appears that the term "initiatives" as that relates to ACE or Fire ACE has its roots in past litigations involving State Farm companies where ACE's discovery was at issue.  *See, e.g., Van Emon*, 2008 WL 205243, at *2 ("'My *in camera* review of documents submitted by Defendant indicates that the ACE program led to the development of "*initiatives*" to render the handling of loss claims by State Farm employees more efficient and less costly for the defendant.  . . .  While my *in camera* review does not confirm whether claims handling policies implemented as a consequence of the ACE *initiatives* were applied to Plaintiff's case, that question is the proper subject of discovery.'" (second and fourth italics added for emphasis) (quoting from magistrate judge's order denying defendant's motion for protective order)); *Chauvin*, 2011 WL 1810625, *3 ("'[W]hether or not the ACE *initiatives* were applied to Plaintiff's case is a proper subject of discovery'" (emphasis added) (quoting *Van Emon*, 2008 WL 205243); *Barten*, 2013 WL 4046700, at *1–*2 (addressing plaintiff's request for production of "[d]ocumentation that State Farm has informed its claims handlers company wide that ACE (Advancing Claims Excellence) *initiatives* are no longer being implemented" (emphasis added)).

[27] *See also* Fed. R. Civ. P. 37(b)(2)(A)(ii) (providing that a court may sanction a party who failed to disclose a Rule 26(a)(1)(i) witness by "prohibiting the . . . party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"), *as incorporated* by Fed. R. Civ. P. 37(c)(1)(C).

the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may *use* to *support its claims or defenses*, unless the use would be solely for impeachment." *Id.* 26(a)(1)(A)(i) (emphasis added). Lopez says that State Farm never disclosed Jensen as a witness as part of State Farm's initial disclosure and asks the Court to strike his declaration. Pl.'s MTS at 1 & n.1.

Specifically, Lopez argues that her Complaint's allegations of bad faith claim handling implicate Fire ACE and State Farm's use of Fire ACE in its handling of her claim. Pl.'s MTS at 3. She adds that State Farm had actual knowledge of her allegations regarding Fire ACE because her Complaint contains numerous allegations that expressly refer to Fire ACE, and therefore, that State Farm had an obligation to disclose Jensen sooner. *Id.* at 4. She believes that State Farm intentionally failed to identify Jensen to obstruct her preparation of her case for trial by preventing her from deposing Jensen before discovery closed. *Id.* She contends that Jensen's testimony constitutes, at best, disputed fact issues that should be subject to verification, cross-examination, and the rigors of the discovery process. *Id.* at 3. She avers that the inclusion of Jensen's testimony would constitute clear prejudice to her. *Id.* at 4.

State Farm does not dispute that it did not disclose Jensen in its initial disclosure. However, it points out that Rule 26(a)(1)(A)(i) only requires that a party disclose witnesses that the party "may use to support its claims or defenses" and represents that "Jensen is not a party that State Farm intends to use to support its claims and defenses in this litigation." Def.'s Resp. to Pl.'s MTS at 2. So, by not disclosing Jensen, State Farm explains, it did not fail to comply with Rule 26(a)(1)(A)(i). *Id.* at 3. Moreover, State Farm adds, its failure to disclose Jensen is both substantially justified and harmless because Jensen's testimony is "relevant only" to counter Lopez's "demand for irrelevant discovery." *Id.*

- 10 -

At base, State Farm's argument is that its use of Jensen's testimony on this discovery motion to support its position—that the requested discovery is "not relevant" to either party's claims or defenses, Def.'s Resp. to Pl.'s First MTC at 6—does not constitute a use of the testimony in support of its defenses.  This argument seems counterintuitive.  For purposes of the Rule, "use" is defined broadly: it "includes *any use* at a pretrial conference, to support *a motion*, or at trial," and "[t]he disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request."  Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment (emphasis added).  Further, a "use to support [a party's] claims or *defenses*," *id.* 26(a)(1)(A)(i) (emphasis added), includes its use to "support its *denial* or rebuttal of the *allegations*, *claim*, or defense of another party," Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment (same).[28]  Indeed, a party's use of evidence to show that certain information or documents are "not relevant" to the other party's claim operates as an *indirect* use of the same to support the proffering party's denial of the other party's allegations and claim.  That is because such a showing, if credited, denies the other party discovery of the information or documents and thus, "a fair chance to develop necessary evidence" to prove its allegations, *Ortiz v. Torgenson*, 857 F. App'x 419, 425 (10th Cir. 2021), dooming its claims, *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (On a motion for summary judgment, "[i]f the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on

---

[28] *See also* Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment (Rule 26(a)(1) "thereby bolsters the requirements of Rule 11(b)(4), which authorizes denials 'warranted on the evidence,' and disclosure should include the identity of any witness or document that the disclosing party may use to support such denials.").

which the opposing party has the burden of proof, trial would be a bootless exercise, fated for an inevitable result.").[29]

Moreover, in arguing that Jensen's testimony is "relevant only" to counter Lopez's demand for irrelevant discovery, State Farm overlooks both Lopez's and its own pleadings.  In her Complaint, Lopez alleges, for example, that "[i]n the case at hand, State Farm employed ACE principles to its handling of plaintiff's claim," Compl. at ¶ 21; that "[i]n the case at hand, State Farm employed its Fire ACE-based claim system in its handling of plaintiff's claim," *id.* at ¶ 38, and that "[t]he goals, processes, and procedures left over from the Fire ACE program have been used to deny the plaintiff's claim," *id*.  And State Farm denied these allegations in its Answer.  Ans. at ¶¶ 21, 38.  So, Jensen's testimony that none of "the Fire ACE initiatives" were in use on the date of Lopez's loss, Jensen Decl. at ¶ 5, is additionally and directly relevant to Lopez's allegations as well as State Farm's denial of the same.[30]  Had State Farm presented Jensen's declaration on a motion for summary judgment, its use of Jensen's testimony would doubtless be considered a "use to support its claims or defenses" and therefore, State Farm would have had the obligation to disclose him sooner under Rule 26(a)(1)(A).  *See, e.g.*, *Textron Innovations Inc. v. SJ DJI Tech. Co*., No. W-21-CV-00740-ADA, 2023 WL 3681712, at *2 (W.D. Tex. Mar. 29, 2023) (striking declarations submitted with defendant's response to summary judgment motion where the declarations provided evidence relevant to the defendant's

---

[29] *See also Laxton v. Gap Inc*., 333 F.3d 572, 577 (5th Cir. 2003) (If a party has been fully heard on an issue during a jury trial, "[j]udgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." (internal quotes omitted)).

[30] *Cf. Olivarez v. GEO Grp., Inc*., 844 F.3d 200, 204–05 (5th Cir. 2016) (stating—in the context of Rule 26(a)(1)(A)(i)'s exception to the initial disclosure requirements for information whose intended "use would be solely for impeachment"—that "some evidence serves both substantive and impeachment functions and thus should not be treated as 'solely' impeachment evidence" and concluding that non-disclosing parties should have disclosed recordings under Rule 26(a)(1) because the recordings had "some impeachment value" as well as "substantive value").

defense but the defendant had failed to disclose both the declarants and their declarations during discovery in violation of Rule 26(a)(1)(A)).

Be that as it may, in ruling on Lopez's First Motion to Compel, the Court declines to consider Jensen's declaration and State Farm's arguments that rely on the same. And on that basis, the Court **DENIES AS MOOT** Lopez's Motion to Strike. However, the Court **GRANTS** Lopez **LEAVE** to take limited deposition of Jensen about his statements in the declaration, in particular about his testimony that "[n]one of the Fire ACE initiatives were in use on August 3, 2023," because Jensen's testimony is relevant to Lopez's claims and State Farm's denials. The Court **CAUTIONS** that the topics of the deposition **SHALL BE LIMITED** to what Jensen testified to in his declaration.

### 2. RFP No. 3 in Plaintiff's Second Request for Production

RFP No. 3 seeks two categories of documents: (1) "McKinsey documents, ACE ('Advancing Claims Excellence') documents, 'Fire ACE' documents," or (2) "other documents referencing or relating to State Farm's adjustment of first[-]party water damage insurance claims in the state of Texas." Pl.'s First MTC, Ex. C at 6, ECF No. 25-1.

Lopez's Second Request for Production does not define the terms "McKinsey documents," "ACE documents," or "'Fire ACE' documents," nor does she explain here what types of documents are encompassed in those terms. As drafted, these terms could encompass any document that relates to or references McKinsey or ACE. Lopez does seem to clarify that the second category of documents relates to "any program that succeeded ACE." Pl.'s First MTC at 9. RFP No. 3 thus seeks documents spanning a period of more than a quarter of a century from the mid 1990's, when the ACE study was conducted, to the present.

Lopez argues that the requested documents are relevant to her bad faith claim. Pl.'s First MTC at 8–9. In her Complaint, Lopez asserts, *inter alia*, a statutory bad faith claim in Count 3, Compl. at ¶ 59(a)(2) (citing Tex. Ins. Code § 541.060(a)(2)(A)), and a common-law bad faith claim in Count 1, *id.* at ¶¶ 41–44.[31] Citing to her allegations in her Complaint, Lopez contends that State Farm's strategy of paying claims is relevant to whether State Farm's motive for denying her insurance claim related to an investigation designed to construct a pretextual basis for a denial rather than the merits of her claim. Pl.'s First MTC at 9–10.

State Farm responds that decades-old documents related to the ACE/McKinsey project are not relevant to either party's claims or defenses regarding State Farm's handling of Lopez's insurance claim. Def.'s Resp. to Pl.'s First MTC at 6. State Farm also argues that RFP No. 3 is not temporally limited, and that expansive production of any years-old and sometimes decades-old documents would not be proportionate to the needs of this case—insofar as, State Farm explains, this lawsuit involves a single water loss event and single homeowner's insurance claim, with an amount in controversy of $50,000. *Id.* at 5–7. State Farm adds that it produced, or was in the process of producing, the relevant sections of its claims handling policies that were in effect in Texas on August 3, 2023 (the date of loss that is the subject of Lopez's insurance claim), its claim file for Lopez's insurance claim, and any inspection reports from its underwriting file for Lopez's Policy as requested. *Id.* at 7. It urges that Lopez should not be allowed to engage in a speculative fishing expedition about documents pre-dating her insurance claim by nearly a quarter of a century. *Id.* at 6.

---

[31] *See also Universe Life Ins. v. Giles*, 950 S.W.2d 48, 49, 55–56 (Tex. 1997) (An insurer breaches its common law duty of good faith and fair dealing by denying or delaying payment of a first-party claim when the insurer's liability has become reasonably clear); *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) ("[A]n insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial.").

The task of assessing relevancy of discovery requires a court to "focus on the actual claims and defenses" asserted in the pleadings. Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment. Lopez's Complaint includes lengthy allegations about McKinsey and the "ACE program":[32] approximately 32 numbered paragraphs spanning the length of about 17 pages recite such allegations, *see, e.g.,* Compl. at ¶¶ 15-17, 19, 21–22, 26–38, 43, 78-81, 85-92—whereas only 7 numbered paragraphs in 2 pages allege events specific to the water damage and State Farm's handling of her insurance claim, *see, e.g., id.* at ¶¶ 6–12. While many of the 32 paragraphs allege background facts about McKinsey and its role in developing the ACE program,[33] other paragraphs allege what appear to be McKinsey's recommendations or the findings of the ACE study—regarding what features to include, and were later included, in State Farm's claims handling procedures and policies to "maximize shareholder profits": for example, to "artificially lower claim payments" based on "profit goals" instead of paying claims based on claim adjusters' "professional claim experience" and "the individual merits of each claim"; to provide financial incentives to the claim adjusters to "reduce average claim payouts regardless of merit"; to "aggressively investigate[] only the facts which defeat the claim"; and to "aggressively litigate[] the claim to verdict" when an insured refuses to accept State Farm's "take-it-or-leave-it settlement offers." *E.g., id.* at ¶¶ 16, 21–22, 24–26, 34, 36. The Complaint

---

[32] The Complaint interchangeably uses the terms "ACE program," ACE "project," ACE "system," and "ACE manual." *E.g.*, Compl. at ¶¶ 21, 27, 29, 38, 85, 92.

[33] *See e.g.*, Compl. at ¶ 15 (explain what McKinsey is and its business); *id.* at ¶ 21 (McKinsey assisted State Farm in the ACE program); *id.* at ¶ 85 (similar); *see also id.* at ¶ 35 (explaining that McKinsey built a claim evaluation system around a software platform called Colossus, for which McKinsey used predetermined claim values based on State Farm's profit goals "rather than using evaluations from independent, real-world professionals").

also alleges that the claims handling "principles and techniques"[34] that emerged from the ACE study—and were implemented in State Farm's early version(s) of claims handling procedures and policies—were applied in State Farm's handling of Lopez's insurance claim.  *See id.* at ¶¶ 19, 21–22, 26, 28, 31–32, 28, 92.

Given that for purposes of discovery, "relevance" is "construed . . . broadly," *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); *see also Akridge v. Alfa Mut. Ins*., 1 F.4th 1271, 1276 (11th Cir. 2021) ("Relevance in the context of discovery has been construed broadly." (internal quotes omitted)), it appears that the documents requested in RFP No. 3 are relevant, perhaps, marginally, to some of Lopez's allegations and, in turn, her bad faith claims.  However, as explained below, the Court finds that RFP No. 3 fails the proportionality test.

As mentioned above, discovery must not only be relevant but also be proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  The objective of the proportionality test is to guard against "the potential for discovery to be used as an instrument for delay or oppression" and to enable the court to keep a "tighter rein" on the extent of discovery "that may be directed to matters that are otherwise proper subjects of inquiry."  Fed. R. Civ. P. 26 advisory committee's notes to 1993 and 2015 amendments.  In assessing the proportionality of discovery, courts consider the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[34] Lopez uses the term "principles" to refer to "the claim handling principles of ACE" and "ACE principles," *see, e.g.*, Compl. at ¶¶ 21, 31, as does in her motion brief, Pl.'s First MTC at 9.  Also, in her brief, she mentions "the teachings and concepts of ACE."  *Id.*  Such terms are amorphous and nebulous, and their scope and meaning are in the eyes of the beholder.  *See Barten v. State Farm Mut. Auto. Ins*., No. CV12399TUCCKJLAB, 2014 WL 12639915, at *1–*2 (D. Ariz. Feb. 5, 2014) (addressing the parties' disputes over "principles of ACE" long after the court issued an order compelling production of "[d]ocumentation of the programs since ACE in which the *principles of ACE* are included" (emphasis added)).

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[35]  The proportionality factors "are not talismanic"; rather, "they are to be applied in a common sense, and practical manner." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018) (internal quotes and citation omitted).

The issues in this case involve Lopez's alleged water damage to the walls and floor of her home, State Farm's alleged mishandling of her insurance claim for the damage, and denial or non-payment of the claim.  Lopez's recovery in this case is $50,690.30 (the cost of repairs for the damage), exclusive of attorney's fees and any treble, actual, and punitive damages.  Def.'s Resp. to Pl.'s First MTC, Ex. A at 12, ECF No. 12; *see also* The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 301 (2010) ("Plainly, in the many civil actions that are essentially private disputes (such as breach of contract or traditional tort actions), nonmonetary factors may be irrelevant.").

Although State Farm does not articulate its potential burden of producing the requested documents, given that RFP No. 3 seeks documents spanning a period of more than a quarter of a century from the mid 1990's (when the ACE study was conducted) to the present, it is reasonable to surmise that the production for RFP No. 3, if permitted, would be voluminous, encompassing thousands, if not hundreds of thousands, of documents.  *Cf. Crump*, 2005 WL 3303978, at *1 &

---

[35] These proportionality factors, for the most part, were first adopted in 1983 and placed in former Rule 26(b)(1)(iii), later transferred, with the addition of two factors, to former Rule 26(b)(2)(C)(iii) in 1993, and finally, transferred to present Rule 26(b)(1) in 2015. *See, e.g.*, Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment; *see also* Fed. R. Civ. P. 26 advisory committee's notes to 1983 amendment ("The elements of [former] Rule 26(b)(1)(iii) address the problem of discovery that is disproportionate to the individual lawsuit as measured by such matters as its nature and complexity, the importance of the issues at stake in a case seeking damages, the limitations on a financially weak litigant to withstand extensive opposition to a discovery program or to respond to discovery requests, and the significance of the substantive issues, as measured in philosophic, social, or institutional terms.").

n.3 (noting that during discovery, State Farm Mutual produced "over 77,000 ACE documents");
*Barten v. State Farm Mut. Auto. Ins.*, No. CIV 12-399-TUC-CKJ (LAB), 2014 WL 11512607, at
*1 (D. Ariz. July 22, 2014) (noting that the State Farm Mutual "agreed to produce nearly 78,000
pages of 'Michigan Auto ACE' documents").

It also appears that Lopez's counsel has access to information pertinent to the ACE study
or program, and that access diminishes the importance of the requested documents in resolving
the issues in this action.  In her Complaint, Lopez asserts that "the facts contained in plaintiff's
complaint are based on plaintiff's available information," Compl. at ¶ 20, and mentions "the
McKinsey slides," presumably some documents authored by McKinsey that contain McKinsey's
recommendations about what features to include in State Farm's claims handling procedures and
policies, *id.* at ¶ 33; *see also id.* at ¶ 36 (alleging "[t]he Fire ACE McKinsey slides are the
construction plans for State Farm's 'claim payment factory.'").  As discussed above, her
Complaint contains allegations about McKinsey's recommendations or the findings of the ACE
study—about what features to include in State Farm's claims handling procedures and policies.
*E.g.*, *id.* at ¶¶ 16, 21–22, 24–26, 34, 36.  Armed with this information and with access to the
documents that State Farm produced, Lopez could have—without resorting to a request for an
expansive document production—investigated, or sought tailored discovery of, whether State
Farm's present-day claims handling procedures, policies, or practices include any of the
allegedly objectionable features that, in Lopez views, are detrimental to State Farm's first-party
claimants such as her.  *E. g.*, *id.* at ¶ 21; *cf. also Lantz.*, 2014 WL 6974856, at *4 ("While the
ACE program may have led Defendant to adopt a certain philosophy or approach for handling
future claims such as Plaintiff's, the Court believes other, more direct, evidence is available from
which to glean that information which would be less burdensome to produce.").

In sum, the Court finds that RFP No. 3 seeks documents that are disproportionate to the needs of this case and therefore **DENIES** Lopez's First Motion to Compel as to this Request. *See Nava v. Allstate Tex. Lloyds*, No. 1:20-CV-415, 2021 WL 7906872, at *2, *6–7 (E.D. Tex. July 14, 2021) (denying plaintiff's motion to compel as to her requests for documents related to a program that Allstate initiated in the 1990's and any program that succeeded it, reasoning that although her "pleading include[d] a lengthy recitation of her version of Allstate's past policies related to claims-handling," her requests were disproportionate to the needs of her case—in that her "attempted deep dive into Allstate's prior policies and overarching claims-handing programs dating to the 1990s [wa]s not sufficiently tailored to the issues at hand . . . and present[ed] a burden which far outweigh[ed] any possibility that the information sought w[ould] lead to evidence relevant to [her] specific claim").

### 3.  RFP No. 4 in Plaintiff's Second Request for Production

RFP No. 4 in Lopez's Second Request for Production states: "If you contend that State Farm no longer uses the claims handling program(s) referenced in [RFP No.] 3, then produce documents that relate to State Farm's discontinuation of ACE or any of its variations."  Pl.'s First MTC, Ex. C at 6.

As to this Request, the Court **DENIES** Lopez's First Motion to Compel in part because, as discussed in Part III.A.1, *supra*, of this Opinion and Order, the Court has granted Lopez leave to depose Jensen about his testimony that none of the Fire ACE initiatives were in use on August 3, 2023, the date of loss that is the subject of Lopez's insurance claim.  *Cf. Crawford-El*, 523 U.S. at 599 (The Rule 26 "provisions create many options for the district judge.  For instance, the court may at first permit the plaintiff to take only a focused deposition of the defendant before allowing any additional discovery.").

### 4. *RFP No. 15 in Plaintiff's First Request for Production*

RFP No. 15 in Lopez's First Request for Production seeks: "all documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling this claim that are related to the adjustment of claims caused by the peril involved in plaintiffs' claim." Pl.'s First MTC, Ex. A at 8.

State Farm argues that the Request is not limited temporally and geographically (i.e., not limited to Texas) and that "all documents" from years earlier are not relevant to the claims in this lawsuit—e.g., whether State Farm properly handled and paid Lopez's 2023 insurance claim. Def.'s Resp. to Pl.'s First MTC at 5. Lopez replies that this Request expressly refers to documents used to train or educate persons involved in the handling of her insurance claim, and therefore, she seems to say, the Request is not overly broad. Pl.'s Reply at 1–2.

In her Complaint, Lopez alleges that State Farm assigned an inadequately trained adjuster to adjust her insurance claim, and that State Farm failed to properly train its employees and agents to whom State Farm entrusted the handling of various portions of her claim. Compl. at ¶¶ 13, 25. She also alleges that State Farm breached its duty of good faith and fair dealing by denying and delaying payment of a covered claim. *Id.* at ¶ 42; *see also id.* at ¶ 59(a)(2).

The Court finds it appropriate to limit RFP No. 15 to the time period **from August 3, 2020**, which was three years preceding the date of loss, **to May 6, 2024**, when, according to Lopez, State Farm constructively denied her claim, Pl.'s Resp. to Proposed Undisputed Facts at ¶ 9; otherwise, State Farm must produce documents responsive to this Request. *See, e.g.*, *TBC-JP-LR, JV v. Allied Prop. & Cas. Ins*, No. 4:17-CV-131-Y, 2018 WL 2971158, at *2 (N.D. Tex. Apr. 20, 2018) (compelling production of documents for the time period from five years prior to the date on which the lawsuit was filed and limited to courses or training received by the

insurer's claim adjuster); *Guardado v. State Farm Lloyds & Dion Mckinley*, No. 3:14-CV-2641-P (BF), 2015 WL 12724048, at *1–*2 (N.D. Tex. Dec. 21, 2015) (compelling, without any temporal or geographical limitations, production of "[a]ll documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage," reasoning that "this information is relevant to the issue of whether Plaintiffs' Claim was properly handled by Defendant," and rejecting the defendant's argument, *inter alia*, that "any materials that predate the storm at issue . . . are of no consequence here").[36]  Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Lopez's First Motion to Compel as to RFP No. 15.

## B.  Motion for Leave to File a Supplement Motion to Compel

Lopez argues that State Farm agreed to comply with RFP Nos. 9, 10, 11, 15, and 16 in her First Request for Production, but has not fully complied with those Requests.  Pl.'s Leave Mot. at 1.  As evidence, she points out that in its motion for partial summary judgment filed on January 13, 2025, State Farm mentions its Quality First Contact (QFC) claims handling documents, but State Farm did not produce them.  *Id*. at 2–3; *see also* Def.'s Partial Mot. for Summ. J. at 2 ("State Farm advised the public adjuster that it needed to speak with the insured (Plaintiff) to conduct its QFC (quality first contact) and to confirm that the insured wanted State Farm to handle the claim through the public adjuster." (citing State Farm's document production with bates number), ECF No. 40; Def.'s Proposed Undisputed Facts at ¶¶ 4, 6 (same).

---

[36] *See also, e.g.*, *In re Katrina Canal Breaches*, No. CIV.A. 05-4182, 2007 WL 1655751, at *1 (E.D. La. June 6, 2007) (overruling objections to interrogatory, explaining that "training of the various persons (apparently four) whom defendant assigned to handle adjustment of plaintiffs' insurance claim are highly relevant to plaintiffs' claim in this case that defendant breached the affirmative duty to adjust claims fairly and promptly and otherwise acted in bad faith").

State Farm responds that the QFC documents were referenced in the documents it produced on December 17, 2024, and that it has since agreed to produce the QFC documents.[37] Def.'s Resp. to Pl.'s Leave Mot. at 2; *see also id.*, Ex. A (State Farm's Dec. 17, 2024 document production with bates numbered LOPEZ00000001PROD to LOPEZ00000298PROD); Def.'s Partial Mot. for Summ. J. at 2 (citing LOPEZ_000032).  Further, State Farm represents that as of January 31, 2025 (when it filed its response to Lopez's leave motion), it was in the process of gathering the responsive, non-privileged QFC documents to be produced.  Def.'s Resp. to Pl.'s Leave Mot. at 2–3.

State Farm seems to concede that the QFC documents are responsive to RFP Nos. 9 and 16 in Lopez's First Request for Production, *see id.* at 2, but it does not explain why it did not produce them earlier.  Given that State Farm is in the process of producing, or perhaps, by now, has produced, the QFC documents and there being no other basis to infer that State Farm has not fully complied with the RFPs for which it agreed to produce documents,[38] the Court **DENIES AS MOOT** Lopez's Motion for Leave to File a Supplemental Motion to Compel.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

- Plaintiff Emilia R. Lopez's First Motion to Compel (ECF No. 25) is **GRANTED IN PART and DENIED IN PART**;

---

[37] The record reflects that in an email dated January 21, 2025 (then, a week after State Farm filed its summary judgment motion and a day before Lopez filed the instant leave motion), Lopez's counsel notified State Farm's counsel that State Farm did not include its QFC documents in its December 17, 2024 production.  Def.'s Resp. to Pl.'s Leave Mot., Ex. B, ECF No. 47-2.  On January 22, 2025, State Farm's counsel responded that he would confer with State Farm regarding the documents and on January 31, 2025, confirmed that State Farm has agreed to produce the documents.  *Id.*

[38] As alluded to earlier, State Farm explains that it has no documents in its possession, custody, or control that are responsive to RFP Nos. 10 and 11 in Lopez's First Request for Production.  Def.'s Resp. to Pl.'s Leave Mot. at 3.

- Plaintiff's Motion to Strike Unsworn Declaration of Michael T. Jenson (ECF No. 27) is **DENIED AS MOOT**; and

- Plaintiff's Opposed Motion for Leave to File Supplemental Motion to Compel (ECF No. 43) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that within **thirty (30) days** of the entry of, and consistent with, this Opinion and Order, Defendant State Farm Lloyds **SHALL PRODUCE** documents responsive to RFP No. 15 in Lopez's First Request for Production and **SHALL PRODUCE** Michael T. Jenson for limited deposition as set forth in Part III.A.1, *supra*.

**So ORDERED and SIGNED this  26th  day of February 2025.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**