IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EMILIA R. LOPEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CAUSE NO. EP-24-CV-54-KC** |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION</u>**

On May 22, 2025, Defendant State Farm Lloyds filed its Supplemental Motion for Partial

Summary Judgment ("Supplemental Motion"), ECF No. 51.  On March 31, 2026, the Court

**GRANTED in part** and **DENIED in part** the Supplemental Motion with a memorandum

opinion to follow.  Mar. 31, 2026, Text Order.  The Court now issues its opinion.

**I.     BACKGROUND**

This is an insurance coverage dispute.  The following facts are undisputed unless

otherwise noted.  Plaintiff Emilia R. Lopez owns a residence that was insured under a

homeowner's policy issued by State Farm for the period of August 13, 2022, to August 13, 2023.

Compl. ¶¶ 7–8, ECF No. 1; Proposed Undisputed Facts ("PUF") ¶ 2, ECF No. 40-1; PUF Resp. ¶

2, ECF No. 45-1.[1]  Lopez alleges that the Property sustained water damage on August 3, 2023,

within the coverage period, and she submitted a claim to State Farm approximately one month

later, on September 6.  PUF ¶ 1; PUF Resp. ¶ 1.

Shortly after receiving the claim, State Farm was contacted by a public adjuster

representing Lopez.  PUF ¶ 4; PUF Resp. ¶ 4.  After a protracted back-and-forth between State

---

[1] In the Supplemental Motion, State Farm refers back to the evidence submitted during the previous round
of summary judgment.  Supp. Mot. ¶ 9.

Farm and Lopez's public adjuster and later, her attorney, State Farm inspected the property on January 16, 2024.  PUF ¶¶ 6–9; PUF Resp. ¶¶ 6–9.  Then, on February 18—before State Farm had accepted or denied her claim—Lopez filed this lawsuit, alleging that the parties had reached an impasse and that further negotiations would be futile.  PUF ¶ 11; PUF Resp. ¶ 11; Compl. ¶ 6.  Lopez asserted both common law and statutory claims.  Her common law claims included breach of the duty of good faith and fair dealing, breach of contract, common law fraud, fraud by nondisclosure, and fraud in the sale of an insurance policy.  Compl. ¶¶ 41–53, 72–93.  She also brought statutory claims under multiple provisions of the Texas Insurance Code's deceptive practices section (Chapter 541), as well as one claim under the Texas Deceptive Trade Practices Act ("DTPA").  *Id.* ¶¶ 54–69.

The parties proceeded with discovery and retained experts, who have rendered competing opinions as to the source of the water damage at Lopez's property.  Original Mot. Ex. B ("Burns Report"), ECF No. 40-3; Decl. Philip Emiliano ("Emiliano Decl.") ¶ 9, ECF No. 52-18.

On January 13, 2025, State Farm filed a Partial Motion for Summary Judgment ("Original Motion"), ECF No. 40.  On April 25, 2025, the Court granted in part and denied in part the Original Motion.  Apr. 25, 2025, Order, ECF No. 49.  The Court granted summary judgment in State Farm's favor as to all of the common law fraud claims, denied summary judgment as to the claim under section 541.060(a)(4)(A) of the Texas Insurance Code, and dismissed the remainder of Lopez's claims without prejudice for lack of subject matter jurisdiction.  *Id.* at 23–24.  The Court found that the lion's share of Lopez's claims had not yet accrued because State Farm had not yet made a coverage decision—that is, they had not yet denied Lopez's insurance claim.  *Id.* at 9–14.  Lopez was given leave to amend to the extent that post-filing events had caused her claims to accrue.  *Id.* at 20–23.

On May 8, 2025, Plaintiff filed a Supplemental Complaint, ECF No. 50, reasserting her dismissed claims and alleging, in pertinent part, that State Farm had finally denied her insurance claim on April 2, 2025.  Supp. Compl. ¶ 1.  On May 22, 2025, State Farm filed this Supplemental Motion.  Lopez filed a Response, ECF No. 55, in opposition.[2]  State Farm has not filed a reply, and the deadline to do so has elapsed.  *See* W.D. Tex. L.R. CV-7(e)(2).

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to

---

[2] The Response was filed under seal because it contains confidential information.  A redacted version is available on the public docket at ECF No. 52.

"particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party, but factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### B.    Analysis

State Farm seeks summary judgment on all of Lopez's extra-contractual claims, only. Supp. Mot. 1, 10–11.  "[The] [M]otion does not address [her] breach of contract claim."  *Id.* ¶ 1.

#### 1.    Fraud & Negligence / Gross Negligence / Malice

As an initial matter, State Farm argues that to the extent Lopez has pleaded a negligence or gross negligence claim in the Supplemental Complaint, it must be dismissed.  Supp. Mot. ¶¶ 19–25.  But Lopez does not appear to do so—she makes only a single conclusory reference to

4

"defendant's gross negligence" in connection with her bad faith claim.  Supp. Compl. ¶ 7.  In her

Response, she does not argue that she has brought any negligence claim.  *See generally* Resp.

In any event, Lopez was granted leave to "file a supplemental pleading" for the limited

purpose of "reasserting the claims dismissed for lack of subject matter jurisdiction."  Apr. 25,

2025, Order 24.  Those claims were "for breach of contract, breach of the duty of good faith and

fair dealing," and several claims under the Texas Insurance Code and the DTPA.  *Id.*  She was

warned "that a supplemental pleading that exceeds the scope for which she has been granted

leave [would] be stricken."  *Id.*

State Farm also argues that Lopez's fraud claim must be dismissed.  Supp. Mot. ¶ 26.

The Court previously granted summary judgment in favor of State Farm on Lopez's fraud claim,

and denied leave to amend as to that claim.  Apr. 25, 2025, Order 17–20.  Therefore, State Farm's

Supplemental Motion is granted in part and Lopez's fraud claim is again dismissed as improperly

repleaded.  So too are Lopez's negligence, gross negligence, and malice claims, to the extent

they have been brought.

### 2.    Section 541.060(a)(4)(A) Claim

Next, the Supplemental Motion is somewhat unclear as to whether State Farm seeks

summary judgment on Lopez's section 541.060(a)(4)(A) claim.  While State Farm sometimes

appears to seek dismissal of all of Lopez's section 541.060 claims, generally, State Farm also

acknowledges that the Court has previously denied its request for summary judgment as to

section 541.060(a)(4)(A).  *Compare* Supp. Mot. 10–11 & ¶¶ 2, 15–17, *with* Supp. Mot. ¶ 1.

Therefore, in an abundance of caution, and to the extent that State Farm seeks dismissal of the

541.060(a)(4)(A) claim, the Supplemental Motion is denied in part as to that request for reasons

stated in the Court's prior Order.  *See* Apr. 25, 2025, Order 14–17.

### 3.    Claims Subject to Bona Fide Dispute Doctrine

Turning to the bulk of the Supplemental Motion, State Farm seeks dismissal of Lopez's remaining extracontractual statutory and common law claims under the bona fide dispute doctrine.[3]  Supp. Mot. ¶¶ 10–18.  This doctrine applies to Lopez's common law claim for breach of the duty of good faith and fair dealing, as well as her claims under section 17.46(b) of the DTPA and sections 541.060(a)(2)(A), (a)(3), and (a)(7) of the Texas Insurance Code.  *Kim v. Nationwide Mutual Ins. Co.*, 614 F. Supp. 3d 475, 495 (N.D. Tex. 2022) (citations omitted).  To prevail on any of those claims, "the insured must prove that the insurer acted in bad faith."  *See Kazanjian v. State Farm Lloyds*, No. 3:22-cv-71-KC, 2023 WL 2034441, at *3 (W.D. Tex. Feb. 15, 2023) (citations omitted) (quoting *Mt. Hawley Ins. Co. v. Huser Constr. Co.*, No. 18-cv-787, 2019 WL 1255756, at *8 (S.D. Tex. Mar. 19, 2019)).

This is because there is no extracontractual liability for an insurer's simple failure to pay a claim covered by the parties' insurance contract.  Failure to pay a covered claim supports a breach of contract claim.[4]  And contractual liability for what is ultimately deemed to be a covered loss is not excused, even where there is a bona fide coverage dispute at the outset of the investigation.  However, "the existence of a 'bona fide controversy is a sufficient reason for

---

[3] The parties do not clearly or consistently describe or differentiate Lopez's claims.  Lopez's Complaints lists a number of subsections of the Texas Insurance Code, without pleading any concrete factual allegations that would show a violation.  *See* Compl. ¶ 59 (including, inter alia, claims under sections 541.151, 541.061, or 541.060(a)(1) of the Texas Insurance Code); Supp. Compl. ¶ 19 (same).  In her Responses, both to the Original Motion and the Supplemental Motion, Lopez fails to even mention many of these claims, let alone explain why they should survive summary judgment.  *See generally* Resp. Original Mot (not mentioning 541.151, 541.061, or 541.060(a)(1)); Resp. Supp. Mot. (same).  The same is true for the "late payment of claims" count in the Supplemental Complaint.  *See* Supp. Compl. ¶¶ 24–31.  Neither party describes this as a separate claim in their briefing, and it appears to be some composite of Lopez's other statutory and common law claims for bad faith late payment.  *See generally* Supp. Mot.; Resp. Supp Mot.  Therefore, to the extent that Lopez has pleaded distinct causes of action for "late payment of claims" or violations of sections 541.151, 541.061, or 541.060(a)(1) of the Texas Insurance Code, the Supplemental Motion is granted in part and those claims are dismissed as abandoned.

[4] That is, assuming the other breach of contract elements are satisfied.  *See, e.g.*, *Kim*, 614 F. Supp. 3d at 492–93.

6

failure of an insurer to make a prompt payment of a loss claim,'" so long as coverage remains reasonably uncertain. *See Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994) (quoting *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App. 1991)). Therefore, a bona fide dispute shields the insurer from bad faith claims, even as it does not protect it from contractual liability. *See id.*

The "focus" of the bona fide dispute analysis "is on the reasonableness of the insurer's conduct in rejecting or delaying payment of the claim, which is determined by viewing the facts available to the insurer at the time of denial." *Kim*, 614 F. Supp. 3d at 494 (citations omitted); *accord Kazanjian*, 2023 WL 2034441, at *3 (citations omitted). "The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 997–98 (N.D. Tex. 2018) (quoting *Higginbotham v. State Farm. Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)). "This is a high bar." *Wright v. ASI Lloyds*, Nos. 23-40719, 24-40020, 2025 WL 1588832, at *4 (5th Cir. June 5, 2025).

While the reasonableness of an insurer's conduct is often a jury question, some familiar scenarios enable resolution of common law and statutory bad faith claims at summary judgment. *Kim*, 614 F. Supp. 3d at 495 n.19 (citations omitted). For instance, "[c]ourts have consistently held that '[a] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith.'" *Kazanjian*, 2023 WL 2034441, at *4 (citation omitted); *accord Caramba, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 19-cv-1973, 2020 WL 7759960, at *5 (S.D. Tex. Dec. 29, 2020). On the other hand, evidence that the insurer knew that its "experts' reports were not objectively prepared," "that the experts' methodology was faulty," or "that [the insurer] simply failed to engage in any investigation

whatsoever before denying the claim," can support a finding of bad faith.  *State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1178 (E.D. Tex. 1996) (quoting *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993)).

The parties agree that Lopez's claim was not denied until April 2, 2025.  Supp. Compl. ¶ 2; Supp. Mot. ¶ 12.  State Farm argues that, at that time, it was aware of sufficient facts to justify the denial.  Supp. Mot. ¶¶ 10–14.  The facts before State Farm in April 2025 include both the results of the initial inspection in January 2024 and Burns' October 2024 expert report.  *See id.* ¶¶ 6–8, 13.  From the initial inspection, State Farm flagged two issues: (1) the "need to confirm if [the damage] overlaps with similar damage in prior claims," and (2) an apparent conflict between the inspector's observations and Lopez's allegations.  Original Mot. Ex. A ("Claim File") 5, ECF No. 40-2.  Namely, the inspector observed that there was no buckling on the hallway's laminate floor, but Lopez claimed that water from the heater had flowed down the hall before it got under floor tiles in other parts of the house.  *Id.*  To investigate these issues further, State Farm requested photographs from the date of the supposed leak, as well as photographs from a construction company that worked on a similar prior claim at Lopez's property.  *Id.* at 5–6.

In his report, State Farm's expert reviewed photographs from 2015 and 2024 and opined "that the reported water heater leak in the hallway closet could not be substantiated due to a lack of evidence."  Burns Report 4–6.  In his opinion, the tented floor tiles were "the result of thermal expansion and installation defects," which "had not been caused or exacerbated by water exposure from the reported event."  *Id.* at 7.  Consistent with the January 2024 observations, the expert stated that there were "no changes to the flooring or other finishes that would indicate water damage had occurred."  *Id.* at 5.

8

Lopez argues that Burns' assessment was methodologically unsound.[5] Resp. Supp. Mot. ¶ 23. The Court has already rejected this argument. *See* Apr. 25, 2025, Order 4–9. In doing so, the Court found that Burns's methodology was sound and explained that "[i]f Lopez believes Burns's conclusions are flawed, she may challenge them through cross-examination or with her own expert." *Id.* at 7. Indeed, it appears that Lopez has a witness who is prepared to testify that, in his professional opinion, "water escaped from the water heater and caused the damage" to her tile flooring. Emiliano Decl. ¶ 9. But that only means that this case entails a quintessential battle of the experts, in which the bona fide dispute doctrine provides a shield to bad faith liability. *See Kazanjian*, 2023 WL 2034441, at *4.

Lopez has not pointed to evidence of the kind that could undermine Burns's expert report to the degree necessary to create a jury question on bad faith. There is no indication that his methodology was faulty, much less that State Farm knew it was faulty but decided to deny the claim anyway. *See Woods*, 925 F. Supp. at 1178. There is not, for instance, any evidence that Burns was hired specifically because he had a known bias that would lead him to issue a report favorable to State Farm, or that State Farm ignored or rejected other expert opinions that conflicted with Burns's assessment. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448–50 (Tex. 1997). Nor is there any indication that Burns's opinion is "ridiculous" or "unreasonable."[6] *See id.* at 450. Indeed, Burns's opinion coheres logically and is consistent with concerns that

---

[5] Lopez also appeals to State Farm's lengthy delays at every stage of the investigation in arguing that it denied her claim in bad faith. *See* Resp. Supp. Mot. ¶¶ 27–28, 34–38, 43. The Court previously denied summary judgment on Lopez's section 541.060(a)(4)(A) claim—and does so again in this Order— precisely because a jury could find those delays unreasonable. Apr. 25, 2025, Order 15–17. And because Lopez's section 541.060(a)(4)(A) claim is "grounded in [State Farm's] delayed coverage decision," not in a bad faith delay or denial of payment, that claim is not subject to the bona fide dispute doctrine. *See id.* at 15.

[6] To be sure, Emiliano draws a different conclusion as to the source of the damage to Lopez's floor, but he does not mention Burns's contrary opinion, much less question its professional integrity. *See generally* Emiliano Decl.

were first flagged at the initial inspection many months earlier and never adequately addressed by Lopez.  *Compare* Claim File 5, *with* Burns Report 4–7.

The Court expresses no opinion as to whether Lopez did in fact sustain a covered loss to her property.  But there is no genuine dispute that State Farm had ample evidence from which to conclude that she did not.  Therefore, the Supplemental Motion is granted in part and all of Lopez's remaining extracontractual claims other than the section 541.060(a)(4)(A) claim are dismissed.

## III.   CONCLUSION

Accordingly, the Motion, ECF No. 51, is **GRANTED** in part and **DENIED** in part. Lopez's breach of contract and section 541.060(a)(4)(A) claims remain pending.  All other claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that, **on or before May 21, 2026**, the parties shall meet and confer and **FILE** a joint notice, providing multiple dates of availability for trial in this matter.  The parties are advised that the Court ordinarily schedules jury selection to begin on Friday, resuming the following Monday and continuing thereafter until complete.

**SO ORDERED**

**SIGNED this 7th day of May, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

10